**BURNS et al. v. COMMISSIONER OF INTERNAL REVENUE.**
**COMMISSIONER OF INTERNAL REVENUE v. BURNS et al.**
**Nos. 12787, 12811.**

United States Court of Appeals
Fifth Circuit.

Nov. 10, 1949.

Joseph B. Brennan, Atlanta, Ga., for taxpayer.

Abbott M. Sellers, Ellis N. Slack, Virginia H. Adams, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, Washington, D. C., Charles E. Lowery, Sp. Atty., for respondents.

Before HUTCHESON, McCORD and SIBLEY, Circuit Judges.

McCORD, Circuit Judge.

This is a petition and cross-petition for review of a decision of the Tax Court sustaining a deficiency assessment in estate taxes against the executors of the estate of James E. Frizzell.

By stipulation between the parties both appeals have been consolidated for our review, since they present substantially similar issues of law and fact.

The main questions presented are: (1) whether a transfer in trust was made "in contemplation of death", within the meaning of Section 811(c) of the Internal Revenue Code, Title 26 U.S.C.A. § 811(c); and (2) whether, in the event such a transfer was made, the income and property accumulated by the trust between the date of transfer and the date of decedent's death are properly includible in his gross estate for tax purposes.

The material facts, as revealed by the record and found by the Tax Court, may be summarized:

Decedent was a resident of Waverly Hall, Georgia, and died testate on August 23, 1940, at eighty-four years of age. On October 14, 1937, while in his eighty-first year, he executed a trust agreement creating an irrevocable trust for the benefit of his incompetent son, William Pitts Frizzell. He transferred 1,132 shares of common stock of the Coca-Cola Company to the Trust Company of Georgia, trustee for the son under the trust agreement. At the time the trust was created decedent had a wife and two daughters, in addition to his incompetent son. The daughters were both normal adults, capable of caring for themselves and leading independent lives. The son William, although then forty years of age, had never developed mentally, his mind being equivalent to that of a child of twelve. He was unable to take care of either money or property or to earn a living, and had always lived with his parents who bought his clothes and took care of him in every way.

The trust agreement provided that the trustee should distribute whatever income from the trust it should determine, in its discretion, to be necessary to provide for the reasonable needs of William during his life, and to accumulate in the trust all of the undistributed income. It authorized the trustee to make and change investments, and to encroach upon the trust corpus for the benefit of William in the event an unusual need arose which the trust income was insufficient to meet. However, during the three years from the time the trust was created until decedent's death, the trustee did not distribute all of the annual trust income, but paid out only nominal portions thereof to William's mother for his benefit.[1] During this period the trustee invested about $9,193 of the undistributed trust income in stocks and bonds. At the time of decedent's death, the value of the trust corpus was $119,820.80.[2]

There is evidence to show that decedent was in comparatively good health, for a man of his age, at the time the trust was created in October, 1937. From that time until his death, he was shown to be active in the church and in business affairs.

In March, 1938, decedent filed a federal gift tax return in which he reported as a gift the transfer of the Coca-Cola Company stock in trust for his incompetent son. He stated in the return that the "motive" of the gift was "Love and affection and to protect William Pitts Frizzell against his own improvidence and inability to care for his own property."

On April 22, 1940, four months before his death, decedent executed his last will and testament. By this will and a later codicil he devised and bequeathed equal thirds of his residuary estate to a trustee of three trusts for the benefit of his wife and two daughters. At this time he made no further bequests to his incompetent son,

1. The trustee paid William's mother only $50.00 per month from the date of the trust to the date of decedent's death.

2. At decedent's death, the trustee held uninvested, accumulated cash in the trust corpus amounting to $4,792.00; the securities in the trust consisted of the 1,132 shares of Coca-Cola stock, with a value of $108,592.28; 174 shares of Lee Tire & Rubber Company stock, with a value of $4,219.50; Federal Land Bank Bonds with a value of $2,216.17.

William, and stated in a clause of the will that his reason for not doing so was because he had already made a gift in trust which fully provided for William's benefit and protection.

 It becomes patent that decedent's primary purpose in creating the trust was to provide for the financial security of his incompetent son for the remainder of the sons' life. Decedent was eighty-one years old at the time of the trust transfer, and his greatly advanced age, irrespective of his comparative good health and happy disposition, is a strong and pertinent factor to be considered in ascertaining his motives. McClure v. Commissioner, 5 Cir., 56 F.2d 548, 549; Updike v. Commissioner, 8 Cir., 88 F.2d 807. Moreover, the son had always lived with decedent, and as long as decedent was alive he would always bear the burden and responsibility of taking care of him, financially and otherwise. Only after decedent's death would a real need for the trust arise. The transfer itself consisted of approximately one-fourth of decedent's estate, and the other members of his family were left corresponding shares in the will, in which no further provision was made for the son. See Igleheart v. Commissioner, 5 Cir., 77 F.2d 704; Updike v. Commissioner, 8 Cir., 88 F.2d 807, 711; Cf. Smails v. O'Malley, 8 Cir., 127 F.2d 410, 414; Flack v. Holtegel, 7 Cir., 93 F.2d 512, 514.

We are of opinion the Tax Court correctly held that the value of the trust estate created by decedent for the benefit of his incompetent son should be included in his gross estate as a transfer "in contemplation of death", within the meaning of Section 811(c) of the Internal Revenue Code, Title 26 U.S.C.A., § 811(c). Furthermore, whether such transfer was made in contemplation of death was a question of fact, and we cannot view the findings of the Tax Court as clearly erroneous where, as here, they are amply supported by the evidence. Allen v. Trust Co. of Georgia, 326 U.S. 630, 636, 66 S.Ct. 389, 90 L.Ed. 367; Wright-Bernet, Inc., v. Comm., 6 Cir., 172 F.2d 343; Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., Cf. Colorado Nat. Bank v. Commissioner, 305 U.S. 23, 59 S.Ct. 48, 83 L.Ed. 20; U. S. v. Wells, 283 U.S. 102, 118, 51 S.Ct. 446, 75 L.Ed. 867; City Bank Farmers Trust Co. v. McGowan, 323 U.S. 594, 599, 65 S.Ct. 496, 89 L.Ed. 483.

We further sustain the holding of the Tax Court on the cross-petition that only the value of the Coca-Cola stock transferred was properly includible in decedent's gross estate, and not the value of the other securities and property acquired from accumulations of trust income comprising a part of the trust corpus at his death. The tax statute in question should be strictly construed in favor of the taxpayer, and since it does not expressly provide for the inclusion of income derived from the transferred property in the gross estate, it is not our prerogative, by judicial fiat, to give it that effect. Title 26 U.S.C.A., Sections 811(c), 811(j); Cf. Humphrey's Estate v. Commissioner, 5 Cir., 162 F.2d 1; Maass v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940, 132 A.L.R. 1035; Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368; Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858.

The judgment in both appeals is accordingly

Affirmed.