OPINION OF THE COURT
Louis D. Laurino, J.
This is a proceeding commenced by the court pursuant to its own administrative rule requiring the filing of an account within one year of the date of appointment of a fiduciary who is also an attorney. As set forth in the decree admitting the decedent’s will to probate the attorney/fiduciary was ordered to "file an accounting with this court no later than twelve months from the date of this decree; failure to do so will result in the revocation of letters.” Pursuant to this decree, the executor filed his account. The papers presented on the accounting raised issues with respect to the reasonableness of *726 legal fees and the accuracy of commissions charged by the attorney/fiduciary and accordingly these issues were set down for hearing before the court. (Cf. Matter of Male Infant B., 96 AD2d 1055.)
The enactment of the administrative rule outlined above was prompted in part by the discretionary authority of the court to supervise the charging of fees for legal services rendered even in the absence of objection (Gair v Peck, 6 NY2d 97; Matter of First Natl. Bank v Brower, 42 NY2d 471; Matter of Schaich, 55 AD2d 914; Matter of Brehm, 37 AD2d 95; cf. Judiciary Law §§ 53, 90). Similarly, even in the absence of objection this court is charged with the responsibility to assure itself that commissions claimed by a fiduciary have been accurately computed in accordance with law (SCPA 2307; Matter of Marri, 79 Misc 2d 990).
In a larger sense, however, this rule was prompted by the numerous complaints over the years involving the nomination and performance after appointment of attorneys as fiduciaries of estates (cf. Matter of Weinstock, 40 NY2d 1). While it may seem that the supervisory strictures of this rule single out the members of the profession of law for harsher treatment than all others similarly situated, the intent of this rule is preventive not punitive. In a small way this rule is meant to restore the public’s confidence in the legal profession.
As background it should be remembered that at common law an executor or administrator was not entitled to extra compensation for legal services rendered by him to the estate. (Broughton v Broughton, 43 Eng Rep 831.) The logic of this rule was simple and compelling. "[N]o person in whom fiduciary duties are vested shall make a profit of them by employing himself, because in doing this he cannot perform one part of his trust, namely, that of seeing that no improper charges are made” (Broughton v Broughton, supra, p 833). In the absence of statute otherwise, this remains the majority rule in the various jurisdictions of the United States (see discussion, Ann., 65 ALR2d 809).
In New York the common-law rule as it applies to a fiduciary who is also an attorney has been abrogated by statute which permits compensation for legal services rendered as the attorney as well as statutory commissions for his services as fiduciary. This legislative permission for dual compensation, however, was not given without limitation. The Legislature recognized that there are any number of factual situations in *727 which an attorney, because of his relationship to the decedent, or his expertise or impartiality, etc., would be the ideal candidate for fiduciary by a testator and that it would be unfair to expect him or her to provide legal services to the estate free of charge. The Legislature also recognized the inherent conflict of interest involved in an attorney/fiduciary hiring himself to perform legal services and fixing his own fee and, therefore, the Legislature provided for judicial supervision of legal fees as a statutory safeguard against any impropriety, real or imagined.
As presently stated the law provides that on the settlement of the account of a fiduciary who is an attorney and has rendered legal services in connection with his official duties, he shall be allowed "such compensation for his legal services as appear to the court to be just and reasonable” (SCPA 2307 [1]). Similarly, SCPA 2111 provides that an attorney/fiduciary must obtain court approval for the advance payment of legal fees prior to final accounting.
On its face this court’s rule requiring the self-same accountability and judicial review of fees charged by an attorney/ fiduciary as provided by statute, appears to be tantamount to the reinvention of the wheel; but in fact it is not. In the experience of this court, the vast majority of estates are settled informally by receipt and release with no judicial review of the fairness of fees charged. In this fashion, the carefully crafted statutory safeguards are, practically speaking, ignored, and for this reason the court implemented its rule of mandatory accounting and judicial approval of legal fees.
So there be no misunderstanding, this court rule is not an indictment or even a suggestion that estates settled informally by attorney/fiduciaries with the acknowledged consent of all adult competent interested parties are uniformly tainted by any impropriety or overreaching. In fact, the experience of this court is to the contrary. The public, however, has a right to expect more than simple honesty from a profession in which it has reposed the "responsibility of maintaining our system of justice.” (Matter of Harris, 123 Misc 2d 247, 249-250.) Considering the fact that an attorney/draftsman of a will is uniquely situated to selfishly gain additional employment for himself, the public has a right to expect that members of the Bar avoid even an appearance of impropriety (cf. Code of Professional Responsibility, EC 5-6) and be "prepared to withstand scrutiny of their professional conduct and partic *728 ularly so when they * * * [become] personally interested in the event for which they were retained as counsel.” (Matter of Harris, supra, p 250.)
The present case is a perfect example for the necessity for scrutiny.
Decedent in this estate died on February 23, 1984. His will, which was admitted to probate without contest by means of waiver and consent, left the entire estate to his daughter-in-law, Joanna, a resident and domiciliary of Canada. Despite the fact that as a nondomiciliary alien the residuary legatee was ineligible to receive letters testamentary (SCPA 707), the will nominated her as executrix and the attorney/draftsman was nominated as the alternate executor. Under the circumstances, letters testamentary were issued to the attorney/ draftsman and in accordance with the rule of this court the decree admitting the will directed that the fiduciary file an accounting within one year of his appointment.
As revealed by the accounting filed and as expanded upon by the attorney/fiduciary at the hearing before the court, the bulk of the estate assets consisted of two bank accounts totaling $25,938.74 and a one-family house which was sold for $16,000. The accounting also sets forth $23,000 as the value of the furniture, glassware and kitchen utensils found in the decedent’s home and distributed in kind to the residuary legatee. This valuation of personalty was not the result of an appraisal but mere guesswork by the fiduciary and considering the decedent’s modest means it would appear that the fiduciary’s guesstimate of $23,000 is suspect. However, in view of the fact the fiduciary does not seek a commission for the distribution of these furnishings there is no need for further comment on their valuation except to note that the inclusion of $23,000 as a part of the gross estate makes the legal fee paid to the attorney/fiduciary more palatable, albeit still unreasonable.
Subtracting the suspect valuation, the total value of the estate including interest realized is $47,614.44. The account reveals that the attorney/fiduciary took a total of $7,307.54 for fees and commissions and disbursements, and that $4,500 had been paid as a real estate brokerage commission on the $16,000 sale of decedent’s house. It was these items of expense which prompted inquiry by the court despite the fact that the account was accompanied by a receipt and release executed by the residuary legatee consenting to these charges.
At the hearing the court discovered that it was mistaken as *729 to these items of administrative expense. The attorney/fiduciary had not received $7,307.54 but instead had actually been paid the sum of $11,807.54 since he was in fact the real estate broker to whom the $4,500 commission was paid. The attorney further revealed that he paid himself without leave of court, $1,000 as advance legal fee and an additional $2,530.72 as the remainder of the legal fee upon execution of the receipt and release for a total of $3,530.72. Of the remaining items of expense paid to the attorney/fiduciary, $2,471.50 is his claimed fiduciary commissions, when in fact the correct sum is $2,380.72; $243.87 was his cost in telephone calls and postage; $405 his expense for traveling to decedent’s home to "secure the property” and take care of decedent’s cat and $400 for the preparation of his own fiduciary income tax returns with total State and Federal tax liability of $287.19.
These items of expense reveal not only lack of understanding of the duties of the executor as the fiduciary of this estate but also his professional and ethical responsibility as an attorney-at-law.
As an executor he had the duty to obtain the best price possible for the sale of decedent’s real property without incurring any improper expenses. With this in mind, he could not hire himself as a real estate broker for sale of estate property and withstand a charge that he is in conflict of interest with his duty as fiduciary. (Cf. Broughton v Broughton, supra.) The fact that the executor in this case is also an attorney-at-law does not alter the situation except to make it more grave. Under the facts presented herein there is an inherent conflict of interest between his duties as fiduciary and as an attorney to his client, in this case himself, as executor, and his anticipated reward as broker. Simply stated, an attorney/fiduciary who acts as broker and receives a brokerage commission for the sale of an estate asset violates every sound principle of professional morality as well as the policy of the law and the fee he received will not be allowed. (In re Lewis, NYLJ, Apr. 2, 1974, p 20, col 3; NY State Bar Assn Opns Nos. 206, 208, 293; Nassau County Bar Assn Opns No. 84-3; Queens County Bar Assn Opns No. 2-85; Assn of Bar of City of New York Opns No. 883.)
Nor will the court allow the expenses outlined above involving disbursements for travel, postage, telephone or preparation of fiduciary tax return. An executor is appointed on a voluntary basis and is paid a statutory commission for the fiduciary services he performs marshalling and securing as *730 sets, paying debts and distributing. He is expected to absorb as overhead the cost of travel to and from decedent’s premises whether to secure the same, prepare it for sale or feed the cat and change its litter. Likewise, as executor or for that, matter as attorney, he is also expected to absorb the cost of telephone or mailing as overhead and may not collect these charges either as legal disbursements or as the expenses of a fiduciary (cf. Matter of Lessig, 165 Misc 706). An executor is also expected to perform free of charge the normal bookkeeping functions incidental to his office including the preparation of simple tax returns. Absent extraordinary circumstances, he cannot seek a separate fee for performing this task himself or for hiring someone else to do it. (Matter of Musil, 254 App Div 765; Matter of Steinberg, 208 Misc 135.)
On the issue of the legal fee paid, the court notes that in advance of final accounting, the attorney/fiduciary paid himself a portion of his legal fee in the sum of $1,000 without obtaining prior approval of the court pursuant to SCPA 2111. Such prepayment without court permission is the basis of automatic surcharge at the statutory rate of interest. (Cf. Matter of Crippen, 32 Misc 2d 1019.)
Despite prior decisional admonitions to the Bar (cf. Matter of Marx, NYLJ, Dec. 17, 1973, p 13, col 3) the advance payment of legal fees to attorney/fiduciaries without leave of court and advance commission to all fiduciaries without prior leave has been a constant source of mistake not only in this estate but also in many other estates reviewed by the court. The statutory procedures for advance payment of fees (SCPA 2111) and commissions (SCPA 2311) are simple and explicit and yet they are rarely used by the attorneys to the financial detriment of their clients and themselves. The members of the Bar are admonished once again that when they act as both attorney and sole fiduciary for an estate they may not take any portion of their legal fee in advance of accounting without prior permission of the court (SCPA 2111). They are also admonished that no fiduciary regardless of whether he is an attorney may receive an advance payment of commissions without court approval (SCPA 2310, 2311). It should be pointed out that in order to correct these constant errors this court recently amended its rule requiring mandatory accounting for attorney/fiduciaries so that in the future the decree admitting the will to probate shall also provide for a direction that there be "no payment of legal fees and/or fiduciary *731 commissions without further Order of this Court SCPA 2111 and 2311”.
With respect to the fee for legal services rendered by the executor in the present case, considering the size and nature of estate assets, the difficulty of the legal problems that confronted counsel, the actual services rendered and the results accomplished, the court finds that just and reasonable value of compensation for legal services shall be fixed in the amount of $1,200 plus permissible legal disbursements of $256.45. As stated above, the executor shall be allowed the corrected amount of $2,380.72 as his fiduciary commission for receiving and paying out the assets of the estate.
In accordance with the above decision of the court the attorney/executor of this estate is directed to repay the sum of $7,970.37 to the estate plus interest in an amount of 6% from the date paid to the date of repayment. He is also directed to file proof of repayment with the clerk of this court within 10 days from the date of this decision. In the alternative he is granted leave to file a bond in this amount, if he intends to appeal.