OPINION OF THE COURT
Edwin Kassoff, J.
On October 22, 1998, this court signed an order submitted by Madeline Egelfeld, the Court Examiner assigned to this matter, which provided, inter alia, that the guardian was to appear at a hearing “to inquire into the propriety of the account” for the period of January 1, 1997 through December 31, 1997, and to determine “whether the Guardian should be removed.” The Court Examiner, in her report, questioned whether the guardian had properly reimbursed herself, without court order, for disbursements for photocopying, fax transmissions, local travel expenses, United Clerical Service and telephone charges. The guardian moved to vacate the order, objecting to the fact that it was signed ex parte, without prior service upon her of the Court Examiner’s report of the account, and arguing that it was violative of her due process rights.
 The guardian argues that, to the extent that the hearing to be held pursuant to the October 22, 1998 order was also to determine whether she should be removed for the allegedly improper reimbursement of disbursements, she should have been served with prior notice of the application, as required by Mental Hygiene Law § 81.35. The court finds that the guardian received appropriate notice of the Court Examiner’s application by virtue of the October 22, 1998 order, which merely ordered her to appear for a hearing to determine whether she should be removed as guardian, without purporting to decide that issue before giving her the opportunity to be heard. Nor does the court agree that the ex parte order violated the guardian’s due process rights. Again, the order merely scheduled a hearing, at which the guardian was given a full and fair opportunity to be heard. Accordingly, the guardian’s *979 motion to vacate the October 22, 1998 order is denied in all respects. Concerning the issue of whether the guardian should be removed, the court finds that the evidence of misconduct did not rise to the level necessary to warrant her removal. As to the propriety of the disbursements for which the guardian reimbursed herself from the incapacitated person’s estate, the court disallows such disbursements, and orders the guardian to reimburse them to the estate of Beatriz Livingston, together with interest at the rate of 9% per annum.
At the hearing held on this matter, the guardian testified that she reimbursed herself for the various expenses in her capacity as guardian, and that none of the disbursements were incurred by her as attorney. The court accepts the guardian’s representation that the expenses at issue were incurred by her as guardian, and this decision, therefore, addresses whether a guardian is entitled to, in addition to statutory compensation, reimbursement for routine, incidental expenses incurred as guardian.
The order and judgment which appointed Margaret Bomba in this case provides that the guardian’s compensation is to be “the same as provided for the compensation of fiduciaries other than trustees, as set forth at SCPA § 2307, as modified by Mental Hygiene Law § 81.28”. Section 81.28 (a) of the Mental Hygiene Law, entitled “Compensation of guardian”, provides that “[t]he court shall establish, and may from time to time _ modify, a plan for the reasonable compensation of the guardian. The plan * * * may be similar to the compensation of a trustee pursuant to section two thousand three hundred nine of the surrogate’s court procedure act; however, the plan must take into account the specific authority of the guardian to provide for the personal needs and/or property management for the incapacitated person.”
SCPA 2307 (1) and 2309 (1), concerning the commissions payable to trustees and commissions payable to fiduciaries other than trustees, respectively, both provide that “the court must allow [the fiduciary] the reasonable and necessary expenses actually paid by him.” The guardian relies upon this language, arguing that the disbursements at issue were reasonably and necessarily incurred on behalf of the incapacitated person, and that therefore she properly reimbursed herself for them. However, the Surrogate’s Courts, in applying these statutes, consider it to be “well settled that the routine and incidental expenses that are incurred by a fiduciary (local travel, meals, postage, telephone, etc.) are usually deemed to *980 be absorbed by the statutory commission” (Matter of Bozzi, NYLJ, Mar. 30, 1999, at 36, col 6 [Sur Ct, Nassau County]).
Thus, the statutes’ reference to “reasonable and necessary expenses” has not been construed to encompass general administrative fees incurred by the fiduciary, but rather pertains to actual expenditures made by the fiduciary, which were necessary to collect, preserve and distribute estate property. For example, in Matter of Slagle (NYLJ, July 13, 1998, at 29, col 5 [NY County]), the Surrogate’s Court approved payments for “specified caretaker services” for the decedent’s vacant property before it was turned over to the devisee, and certain reimbursements to a friend of the decedent who assisted the executrix by picking her up at the airport, paying for a locksmith to secure the decedent’s apartment, and paying for death certificates. The Surrogate’s Court, however, disallowed the following expenses incurred by the executrix, holding that they were absorbed in the statutory commissions: The cost of working meals, expenses related to the executrix’s cat, office supplies, postage, photocopies, fax, local telephone calls and local transportation (see also, Matter of Schuker, NYLJ, Feb. 7, 1996, at 30, col 4 [Sur Ct, Queens County] [noting that fiduciary is normally expected to absorb cost of travel, postage, photocopying and “investment expenses”, but allowing such expenses where executor waived his commissions]; Matter of Lees, NYLJ, Oct. 11, 1990, at 30, col 2 [Sur Ct, Suffolk County] [“(r)outine local travel by a fiduciary in the discharge of his duties is an expense that is absorbable in the statutory commissions”]; Matter of Stalbe, 130 Misc 2d 725, 729-730 [Sur Ct, Queens County 1985]).
There were a number of reasonable and necessary expenses actually paid by the guardian in this case, which were not merely incidental to her duties, and were not, therefore, questioned by the Court Examiner. For example, the guardian made expenditures which were necessary to preserve the incapacitated person’s cooperative apartment, paid court fees to obtain her commission and the incapacitated person’s marriage certificate, and paid for a bond. These are exactly the type of “reasonable and necessary” expenditures for which a fiduciary is entitled to be reimbursed under SCPA 2307 and 2309.
The specific expenses questioned by the Court Examiner in this case, are as follows: $56.50 for fax transmissions, for which the guardian testified she pays to her landlord 50 cents per page, and $3 per transmission; $323 for photocopies, based upon the rate of 25 cents per page, which the guardian testi *981 fied she pays to her landlord; $30 for United Clerical Service, employed by the guardian to perform court filings; $22.50, for a clerk to travel to court and obtain a copy of the order which appointed the guardian; local telephone charges of $118.72, based upon the rate of 63 cents per call billed by the telephone company; and $80.50 for transportation costs, including mileage, tolls, and parking expenses, for travel to and from court, the Court Examiner’s office and the nursing home where the incapacitated person resides.
Based upon the clear mandate of the authorities discussed supra, the court finds that these expenses can only be characterized as routine, incidental costs incurred by a fiduciary, which are expected to be absorbed in the statutory commission. Therefore, it is clear that the guardian, who was on notice from the order appointing her that her compensation would be determined based upon SCPA 2307 and 2309 (which is referenced in Mental Hygiene Law § 81.28), improperly reimbursed herself for these disbursements from the incapacitated person’s estate.
Accordingly, the guardian is instructed to reimburse the estate in the amount of $631.22, together with interest thereon at the rate of 9% per annum. Furthermore, the court, in its discretion, determines that the guardian’s compensation should be reduced by the costs to the Court Examiner for the making of this application (see, Mental Hygiene Law § 81.28), and the Court Examiner is therefore directed to file an affidavit of services with the court and to serve a copy of it upon the guardian. If the guardian, upon receipt of the Court Examiner’s affidavit of services, objects to the contents thereof, she may contact the court’s chambers, and a hearing will be scheduled to fix the fees on the motion.